UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| JESUS OSCAR GUEVARA-HERNANDEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-CV-59-ZMB |
| | ) | |
| TODD BLANCHE,[1] et al., | ) | |
| | ) | |
| Respondents. | ) | |

## **MEMORANDUM AND ORDER**

Before the Court is Petitioner Oscar Guevara-Hernandez's Petition for a Writ of Habeas Corpus. Doc. 1. Guevara-Hernandez primarily asserts that his immigration detention is illegal because he continues to benefit from Temporary Protected Status (TPS) based on a recent district court decision. But because that parallel litigation does not impact Guevara-Hernandez's TPS benefits, and because his other arguments are similarly unavailing, the Court denies his petition.

## **BACKGROUND**

### I. Venezuela TPS and Related Litigation

Under the TPS statute, the Secretary of the Department of Homeland Security (DHS)[2] is authorized to designate a country for humanitarian relief during moments of crisis, such as armed conflicts, natural disasters, or significant instability. *See* 8 U.S.C. § 1254a(b). Nationals of a designated country may apply for TPS, which the DHS Secretary "may grant," thereby preventing detention and removal from the United States during the designated timeframe. *Id.* § 1254a(a). The DHS Secretary is required to review a country's TPS designation before the period expires and may either terminate the designation or extend it for up to 18 months. *Id.* § 1254a(b)(3).

---

[1] Todd Blanche became the Acting Attorney General of the United States on April 2, 2026. Pursuant to Federal Rule of Civil Procedure 25(d), he is substituted for his predecessor, Pamela Jo Bondi.

[2] While the statute refers to the Attorney General, administration of the TPS program was transferred to DHS in 2002. *See Mejia Rodriguez v. U.S. Dep't of Homeland Sec.*, 562 F.3d 1137, 1140 n.3 (11th Cir. 2009) (collecting authority).

In 2021, then-Secretary Alejandro Mayorkas designated Venezuela for TPS. 86 Fed. Reg. 13574 (Mar. 9, 2021). Secretary Mayorkas later extended that designation and also redesignated Venezuela to expand the pool of TPS recipients. 88 Fed. Reg. 68130 (Oct. 3, 2023). Under the 2023 Designation, TPS benefits were set to expire on April 2, 2025. *Id.* But in January 2025, Secretary Mayorkas extended Venezuela's TPS designation until October 2, 2026, subject to timely application for re-registration. 90 Fed. Reg. 5961 (Jan. 17, 2025). The next month, however, then-Secretary Kristi Noem published two notices regarding Venezuela TPS—first vacating the 2025 Extension ("Venezuela Vacatur"), 90 Fed. Reg. 8805 (Feb. 3, 2025), and then terminating the designation altogether ("Venezuela Termination"), effective April 2, 2025, 90 Fed. Reg. 9040 (Feb. 5, 2025).

The National TPS Alliance (NTPSA), an organization established to advocate for TPS beneficiaries, and several TPS beneficiaries filed suit in the Northern District of California to challenge the Venezuela Vacatur and Termination. *See Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807, 814–15 (N.D. Cal. 2026). In March 2025, the district court entered a preliminary order postponing both decisions, which the Supreme Court promptly stayed. *Nat'l TPS All. v. Noem*, 166 F.4th 739, 753 (9th Cir. 2026). The case proceeded, and in September 2025, the district court entered partial summary judgment in favor of NTPSA on its claim that the Venezuela Vacatur and Termination violated the Administrative Procedures Act. *See id.* Once again, the Supreme Court granted a stay through the "disposition of a petition for a writ of certiorari." *Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (2025). Meanwhile, although the summary-judgment appeal was pending, the district court entered a second judgment granting declaratory relief "[b]ased on the merits analysis in its prior summary judgment order." *Nat'l TPS All. v. Noem*, 2025 WL 3539156, at *2 (N.D. Cal. Dec. 10, 2025). The Ninth Circuit subsequently affirmed the district court's partial grant of summary judgment. *Nat'l TPS All.*, 166 F.4th at 749. But that decision remains stayed, with a cert petition currently due in early July. *See Nat'l TPS All.*, No. 25-5724, Doc. 84 (9th Cir. June 9, 2026).

2

## II.      Relevant Facts[3]

Guevara-Hernandez is a Venezuelan citizen who illegally entered the United States prior to July 2024. *See* Doc. 1 ¶¶ 1, 16; Doc. 1-2 at 1; Doc. 9 at 2. He was later granted TPS under the 2023 Designation, which originally lasted until April 2, 2025. Doc. 1-3 at 1. Guevara-Hernandez applied to re-register for TPS after the 2025 Extension, and DHS acknowledged receipt of his materials on January 19, 2025, indicating that the agency was processing his request. Doc. 1-4 at 1. After the Venezuela Vacatur, Guevara-Hernandez received a Notice to Appear and was charged with being present in the United States without being admitted or paroled. Doc. 1-2 at 1. He was arrested and is presently detained at the Ste. Genevive County Detention Center during the pendency of his removal proceedings. Doc. 1 ¶ 19. Guevara-Hernandez sought release from the immigration court, which denied his request based on its interpretation that 8 U.S.C. § 1225 requires mandatory detention during removal proceedings. *Id.* ¶ 21.

## III.      Procedural History

Guevara-Hernandez filed his habeas petition on March 13, 2026, arguing that his detention is unlawful because he continues to benefit from the TPS program. *Id.* ¶¶ 1, 25–35. This Court ordered the Government to show cause why the petition should not be granted. Doc. 6 ¶ 3. The Government timely responded, Doc. 9, and Guevara-Hernandez filed a reply, Doc. 10. In light of the potential need for factual findings, the Court set a hearing to develop the record regarding Guevara-Hernandez's NTPSA membership and to inquire about the impact of *National TPS Alliance* on this case. Doc. 11. The parties filed supplemental briefing without seeking leave to do so. Docs. 15–17. The Court then conducted a hearing with Guevara-Hernandez present and heard both limited testimony and argument from both parties. Doc. 20 ("Tr.").

---

[3] For present purposes, the Court assumes the allegations in the petition as true and supplements those facts with undisputed allegations from the Government, *see* 28 U.S.C. § 2248, and the Court's factual findings from the April 15 hearing.

## LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdiction." 28 U.S.C. § 2241(a). "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). A district court may grant a writ of habeas corpus if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c). Courts in this circuit and elsewhere have recognized that a habeas petitioner "bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful." *Vargas Lopez v. Trump*, 802 F. Supp. 3d 1132, 1137 (D. Neb. 2025) (collecting cases).

## DISCUSSION

Guevara-Hernandez advances four grounds for relief. Primarily, he asserts that his status as a TPS beneficiary precludes detention. His other three points are a statutory interpretation argument based on 8 U.S.C. § 1225, a Suspension Clause claim, and an as-applied due process challenge. After careful consideration, the Court denies the petition because all four arguments fail.

## I.     Guevara-Hernandez has not met his burden of showing that he remains a TPS beneficiary.

Guevara-Hernandez makes two TPS-related arguments. First, he claims he was a "party" to the declaratory judgment[4] in *National TPS Alliance*, which means that he maintains TPS benefits. Doc. 1 ¶¶ 1, 26–35. Guevara-Hernandez also argues that, because he timely re-registered for TPS, his benefits continue at least while his application is pending. *See* Tr. at 28–29. But Guevara-Hernandez was not a party to the *National TPS Alliance* litigation because he is not bound by the outcome of that case, so he cannot use it offensively against the Government. And without the declaratory judgment, Guevara-Hernandez has no basis for claiming that he is a TPS beneficiary.

---

[4] Guevara-Hernandez separately suggests that the Ninth Circuit's mandate in *National TPS Alliance* means that at least the postponement order is in effect. *See* Doc. 1 ¶ 30; Doc. 15 at 9 ("Second, the August 29, 2025 postponement judgment in *NTPSA I* later became formally effective through issuance of the March 26, 2026 mandate."); Tr. at 50. But that argument is mistaken. The Supreme Court stayed that ruling and the summary-judgment order until "disposition of the appeal in the United States Court of Appeals for the Ninth Circuit *and* disposition of a petition for a writ of certiorari." *Noem v. Nat'l TPS All.*, 145 S. Ct. 2728, 2729 (2025) (emphasis added) (postponement order); *see also Nat'l TPS All.*, 146 S. Ct. at 24 (summary judgment). And as noted above, the Government still has time to file its cert petition. Thus, until that deadline elapses or the Supreme Court rules on any petition, both orders are stayed.

### a.  The declaratory judgement in *National TPS Alliance* has no impact on this case.

*1.       Guevara-Hernandez was not bound by the* National TPS Alliance *litigation.*

To benefit from the declaratory judgment in *National TPS Alliance* as an unnamed "party," Guevara-Hernandez must have been bound by that case. Although it is well settled that an organization may sue on behalf of its members to secure prospective relief, *see Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1022 (8th Cir. 2012), the organization's members are not automatically parties to the lawsuit. "A 'party' to litigation is 'one by or against whom a lawsuit is brought.'" *U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) (citation and alterations omitted). "For purposes of res judicata, a party to a lawsuit is a person who has been named as a party and has a right to control the lawsuit either personally, or, if not fully competent, through someone appointed to protect the person's interests." *Party*, BLACK'S LAW DICTIONARY (12th ed. 2024). Thus, for the outcome of an organization's case to apply directly to its members, they must be bound by nonparty preclusion.

Generally, nonparty preclusion is at odds with the "deep-rooted historic tradition that everyone should have his own day in court." *Midwest Disability Initiative v. JANS Enters.*, 929 F.3d 603, 607 (8th Cir. 2019) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892–93 (2008)). Whether the outcome of an organization's lawsuit has preclusive effect on its members turns on whether the nonparty member was in privity with a party to the suit—that is, "adequately represented by someone with the same interests." *Id.* (quotation omitted). The adequacy of representation is assessed by determining if "(1) the interests of the nonparty and [his] representative are aligned and (2) either the party understood [itself] to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Yankton Sioux Tribe v. U.S. Dep't of Health & Human Servs.*, 533 F.3d 634, 640 (8th Cir. 2008) (citations omitted). Additionally, adequate representation may "require notice of the original suit to the persons alleged to have been represented." *Id.* These criteria ensure that a court's application of nonparty preclusion does not violate due process. *See Taylor*, 553 U.S. at 901.

Based on the record before the Court, Guevara-Hernandez did not have adequate notice of the lawsuit to permit nonparty preclusion. Guevara-Hernandez joined NTPSA in July 2025—after the postponement order in *National TPS Alliance* but before the district court's separate judgments. *See* Doc. 15-1. But as a factual matter, Guevara-Hernandez demonstrated that he lacked even constructive knowledge of the *National TPS Alliance* litigation. To put it mildly, Guevara-Hernandez was at a loss when asked about that case. Tr. at 47. In fact, from the Court's observations at the hearing, [5] it was clear that he was oblivious to the existence—much less the details—of that litigation. Further, he explained that he became a member of NTPSA only because a paralegal recommended he join, and he confirmed that he had no interaction with the organization after receiving the initial membership email. *See* Tr. at 45–47.

Given that the *National TPS Alliance* litigation was pursued on an organizational-standing theory, adequate representation requires at least some notice of the prior litigation. The fact that Guevara-Hernandez has no knowledge of the lawsuit is at odds with other organizational-standing cases, which require at least some awareness of a lawsuit for members to be bound. For instance, in *Students for Fair Admission v. President and Fellows of Harvard College*, the Supreme Court emphasized that the organization's members filed declarations indicating they had opportunities to affect the litigation in some way or "joined [the organization] voluntarily to support its mission." 600 U.S. 181, 201 (2023) (citations omitted). Notably absent here is any credible indication that Guevara-Hernandez had knowledge of the NTPSA litigation or even minimal activity in the organization. As Guevara-Hernandez put it, he joined because a paralegal said "[t]his is a good thing for you. I recommend you [] do it." Tr. at 45. While he did not need to actively participate

---

[5] It bears noting that Guevara-Hernandez's reaction was not the result of a language barrier. Both he and his lawyer confirmed he was able to understand the proceedings without an interpreter, Tr. at 43, and he capably conversed in English.

in the lawsuit, *see Red River Freethinkers*, 679 F.3d at 1022 (noting that organizational standing is available only if membership participation is unnecessary), he needed to be at least aware of it.[6]

Another reason to reject Guevara-Hernandez's argument is the lack of procedural safeguards that are normally required to ensure adequate representation. In rejecting the unrestrained concept of "virtual representation," the Supreme Court noted that certain protections, such as Rule 23 certification for class actions, enable courts to protect a nonparty's due process rights. *Taylor*, 553 U.S. at 901. But without those protections, courts would, "in effect, [create] a common-law kind of class action" that could be spawned "at will" by federal courts. *Id.* (citation omitted). Indeed, this kind of common-law created class action was recently repudiated by the Supreme Court. *See Trump v. CASA, Inc.*, 606 U.S. 831, 849–50 (2025) (rejecting the use of universal injunctions that bind nonparties as "circumvent[ing] Rule 23's procedural protections"); *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 402–03 (Thomas, J., concurring) (observing that "associational standing creates the possibility of asymmetrical preclusion" where the associations members gain the benefit of a favorable judgment, while "it is not clear whether the adverse judgment would bind the members"). The principle behind organizational standing lawsuits is that "people join an organization . . . to create an effective vehicle for vindicating interests that they share with others." *UAW, Aerospace and Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 290 (1986). Where, as here, the decision to join an organization was made without any meaningful understanding, procedural safeguards are even more important, but there is nothing to suggest any were followed in the *National TPS Alliance* litigation. *See Figueredo*

---

[6] To find that Guevara-Hernandez was adequately represented under these circumstances would raise additional concerns. For example, if NTPSA had lost its case (or does lose on appeal), there would be serious due process concerns about whether Guevara-Hernandez was bound by that judgment. Accepting his argument means that Guevara-Hernandez would be bound by the decision despite the fact that he did not know about the prior lawsuit, did not interact with NTPSA outside of an initial online sign-up, joined the organization only at the behest of a paralegal, and has had no meaningful interaction with the organization. Under these circumstances, it would prove too much to say he was represented sufficiently to be bound by a negative decision, and the same holds for the opposite outcome.

*Castillo v. Arteta*, 2026 WL 1065806, at *5 (S.D.N.Y. Apr. 17, 2026) (finding that *National TPS Alliance* did not have the binding effect on a habeas petitioner because the argument was akin to the concept of "virtual representation" that was rejected in *Taylor*).

As such, based on the record before the Court, Guevara-Hernandez has not met his burden of demonstrating that he was bound by the declaratory judgment in *National TPS Alliance* because he lacked the necessary awareness of the lawsuit to be adequately represented—whether the ultimate outcome proves positive or negative for him.[7]

### 2.   *Nonmutual offensive collateral estoppel does not bind the Government.*

Because Guevara-Hernandez is not a party to *National TPS Alliance*, he can—at most—assert nonmutual offensive collateral estoppel as to the declaratory judgment order. "When an unrelated party later attempts to bind a prior litigant through issue preclusion, or collateral estoppel, courts refer to the attempted estoppel as 'nonmutual offensive collateral estoppel.'" *Gambrell v. United States*, 111 F.4th 870, 876 (8th Cir. 2024) (citation omitted). But "nonmutual offensive collateral estoppel does not apply against the United States government." *Id.* As such, Guevara-Hernandez cannot use the declaratory judgment in *National TPS Alliance* in this manner.

In response, Guevara-Hernandez argues that the bar on non-mutual offensive collateral estoppel does not apply here because that doctrine "does not eliminate ordinary preclusion where

---

[7] There are two other, independent reasons that Guevara-Hernandez cannot benefit from the declaratory judgment in *National TPS Alliance*. The first is jurisdictional. As other courts have noted, the district court in that case lacked jurisdiction to enter its declaratory-judgment order. *See, e.g.*, *Herrera v. Noem*, --- F. Supp. 3d ---, 2026 WL 800721, at *6–8 (D. Ariz. 2026). In both the Eighth and Ninth Circuits, "[o]nce a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed." *Natural Res. Def. Council v. Sw. Marine*, 236 F.3d 1163, 1166 (9th Cir. 2001); *FutureFuel Chem. Co. v. Lonza, Inc*, 756 F.3d 641, 648 (8th Cir. 2014) (same). But in *National TPS Alliance*, the district court expressly "[b]ased [its declaratory judgment order] on the merits analysis in its prior summary judgment order," 2025 WL 3539156, at *2, so that order necessarily encompassed matters that had been appealed. Additionally, courts have noted an issue with the remedy in *National TPS Alliance*. The second judgment in that case was a declaratory, not "coercive," remedy. As such, it does not affirmatively restore TPS benefits even to those individuals who were subject to the judgment. *Nava v. Warden of Port Isabel Serv. Processing Ctr.*. 2026 WL 1018343, at *5–6 (S.D. Tex. Apr. 15, 2026) (denying TRO because the coercive remedy of release was unlikely to succeed on the merits even where the court found that *National TPS Alliance* otherwise had preclusive effect).

8

the same party, or a party in privity, seeks to hold the Government to a final judgment." Doc. 17 at 7. But as noted above, Guevara-Hernandez is neither a party nor entitled to preclusion through his NTPSA membership. And he has not provided any authority to show that he can use the declaratory judgment offensively in this posture. *See Beneson v. Comm'r of Internal Revenue*, 910 F.3d 690, 698 (2d Cir. 2018) (noting that, while *Tayor* recognizes collateral estoppel "in the context of private-party litigation, nowhere [does it] suggest[] any expansion of the use of nonmutual offensive collateral estoppel against the government").

Moreover, as the Government correctly noted at the hearing, Tr. at 64–65, the Court has "discretion to reject th[e] 'offensive use of collateral estoppel,'" *see Granadillo-Arambule v. Daley*, 2026 WL 1157161, at *6 (E.D. Ky. Apr. 29, 2026) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329–30 (1979)). Unfairness to a party is among the key considerations for declining to apply preclusion. *See Twin City Pipe Trades Serv. Ass'n v. Wenner Quality Servs.*, 869 F.3d 672, 676 (8th Cir. 2017) (citation omitted). Under the present circumstances, it would be unfair to the Government to apply collateral estoppel for multiple reasons. First, as noted before, the Supreme Court has stayed summary judgment in the *National TPS Alliance* litigation, and "issuing a judgment that would bind the government in over 84,000 individual cases based on reasoning that has been stayed and cannot be enforced . . . goes too far in defiance of the stay order." *Herrea*, 2026 WL 800721 at *6 (citation omitted). Second, the Supreme Court is poised to resolve issues germane to TPS termination, including the extent of the TPS statute's bar on federal court review. *See Trump v. Miot*, --- S. Ct. ---, 2026 WL 731087, at *1 (2026). Finally, as another district court concluded, "it would be unwise to preclude [the Government] because it would foreclose further consideration of the propriety of former-Secretary Noem's vacatur and termination decisions—an important legal question—based solely on the result of a single out-of-circuit decision." *Rubio v.*

9

*Francis*, 2026 WL 811178, at *11 (S.D.N.Y. Mar. 23, 2026) (citation omitted); *see also Gambrell*, 111 F.4th at 876 (noting that, among the reasons the Government cannot be bound by nonmutual offensive collateral estoppel is "the need to permit the ongoing development of important areas of the law"). Thus, even if the Court had discretion to apply preclusion in this instance, it would decline to do so.

### b. *Guevara-Hernandez has not independently demonstrated that he maintains TPS.*

Having concluded that *National TPS Alliance* has no preclusive effect, the Court will operate under the assumption that the Venezuela Vacatur and Termination decisions remain in effect. *See* Tr. at 42 (disclaiming any independent APA claim). Because Secretary Noem vacated Secretary Mayorkas's extension of the Venezuela TPS designation, Guevara-Hernandez's TPS benefits expired on April 2, 2025. *See* Doc. 1-3 at 1. Thus, while Guevara-Hernandez could not have been removed or detained before then, that protection ended when his TPS benefits lapsed.

Guevara-Hernandez argues that his TPS benefits have not been withdrawn because the "Government didn't process [his application] or take any further action" after he submitted it, meaning he still maintains at least temporary benefits. Tr. at 28–29. That argument misses the mark. First, Guevara-Hernandez does not maintain TPS simply by applying to re-register for it. Indeed, "a pending re-registration application does not automatically confer full TPS status or its attendant protections against detention." *Perez v. Harden*, 2026 WL 1396131, at *2 (M.D. Fla. May 19, 2026) (collecting cases). *But see* 8 U.S.C. § 1254a(a)(4)(B) (outlining the temporary benefits for aliens with pending applications for TPS). That makes sense, especially given that an applicant for re-registration for Venezuela TPS must prove that "they otherwise continue to meet the eligibility requirements for TPS." 90 Fed. Reg. at 5962. And while Guevara-Hernandez received an I-797C notice that DHS received his documentation for re-registration prior to the

Venezuela Termination, *see* Doc. 1-4, he has not offered any authority to suggest that this receipt alone re-registers him for TPS. *See Rubio*, 2026 WL 811178 at *7 ("Form I-797C [is] only a 'Receipt Notice' confirming USCIS's receipt of [a beneficiary's] 'application, petition, or request,' and therefore [does] 'not grant any immigration status or benefit.'" (citation omitted)).[8] Instead, as the Government noted and as other courts have observed, the notice of receipt of application materials is not equivalent to DHS granting TPS re-registration. *See Gonzalez v. Casey*, 2026 WL 1333767, at *4 (S.D. Cal. May 13, 2026) (finding that a Venezuela TPS beneficiary who timely applied to re-register but was not approved prior to the Venezuela Termination did not maintain TPS benefits because the 2025 Extension required the applicant for re-registration to be "*approved by USCIS*" under the extension).

Further, as the underlying concern here deals with termination of Venezuela TPS as a whole and not the withdrawal of Guevara-Hernandez's benefits specifically, any withdrawal procedures are not at issue here.[9] And whether his re-registration application was still pending is immaterial because any TPS benefits would automatically expire on April 2, 2025, in light of the Venezuela Termination. *See* 8 C.F.R. § 244.19 (recognizing that TPS beneficiaries "automatically and without further notice or right of appeal, lose [TPS]" either 60 days after the termination is posted or at the conclusion of the next extension); *id.* § 1244.13(b) (providing the same termination process for temporary beneficiaries). As such, Guevara-Hernandez has not demonstrated that he maintains TPS benefits and, therefore, cannot use TPS as a basis for release.

---

[8] Indeed, while not dispositive, it is telling that the Form 1-797C itself emphasizes that the "NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT." Doc. 1-4 at 1.

[9] Withdrawal is a formal process whereby DHS seeks to rescind the benefits granted to a TPS beneficiary. *See* 12 U.S.C. § 1254a(c)(3). But the Government conceded that, to its knowledge, DHS has not sought to formally withdraw Guevara-Hernandez's TPS benefits, at least as of the date of the hearing. *See* Tr. at 20.

## II.    Guevara-Hernandez's other arguments are similarly unavailing.

Beyond his TPS arguments, Guevara-Hernandez raises three additional points in his Petition. These additional grounds likely fail to justify relief.

First, Guevara Hernandez claims he was incorrectly detained under 8 U.S.C. § 1225(b)(2) (mandatory detention), as opposed to 8 U.S.C. § 1226(a) (permissive detention). But as Guevara-Hernandez acknowledged, this Court is bound by the Eighth Circuit's rejection of that very argument in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).[10] Tr. at 9. Given that concession and the *Avila* decision, the Court finds that Guevara-Hernandez is not entitled to relief on this basis.

Next, Guevara-Hernandez asserts that, if section 1225 requires mandatory detention without review, it would amount to a violation of the Suspension Clause. Doc. 1 ¶ 54. Invoking constitutional-avoidance principles, Guevara-Hernandez suggests that the Court should "interpret and apply the detention statutes in a manner that preserves meaningful habeas review and prevents indefinite, purposeless civil detention." *Id.* ¶ 55. But the premise of this argument borders on the absurd. The Court's review the instant habeas petition, its order to produce petitioner for a hearing, and this very decision demonstrates that the writ of habeas corpus has not been suspended. Thus, there is no meaningful bar preventing Guevara-Hernandez from petitioning for a writ of habeas corpus. *See Tapia v. Mullin*, --- F. Supp. 3d ---, 2026 WL 1657240, at *6–7 (W.D. Tex. June 8, 2026) (observing that "the fact that . . . detained aliens under section 1225(b)(2)(A) have been challenging . . . the lawfulness of their detention through petitions for writs of habeas corpus" is evidence that the writ is not suspended).

---

[10] Counsel hedged by suggesting that, although *Avila* is binding authority, the benefits of TPS affect its application here. Tr. at 7. Given its finding that Guevara-Hernandez does not maintain TPS benefits, the Court will decline to speculate how *Avila*'s reasoning applies to a TPS beneficiary.

12

Finally, Guevara-Hernandez argues that his continued detention violates the Fifth Amendment. He offers four theories in support of his as-applied challenge: (1) the immigration court did not make an individualized custody determination or consider evidence relating to his dangerousness or risk of flight; (2) "the Immigration Court has treated custody as categorically unreviewable"; (3) continued detention does not meet any legitimate government interest because his TPS bars removal; and (4) continued detention "bears no rational relationship to the furtherance of a legitimate government objective" and therefore would be punitive. Doc. 1 ¶ 46.

As this Court has explained in addressing a similar Fifth Amendment claim, the Eighth Circuit previously determined that *Mathews v. Eldridge* factors have been balanced in these circumstances, where an alien is temporarily detained in the midst of active deportation proceedings, so long as they are not indefinite. *See Lugo-Solet v. Mullin*, No. 1:26-CV-52-ZMB, 2026 WL 1162233, at *2 (Apr. 29, 2026) (citing *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024)). Thus, an individualized determination is not necessary under the section 1225 framework. And even if detention has no legitimate purpose for current TPS beneficiaries, that argument is irrelevant here because Guevara-Hernandez has failed to show he remains in that category.

In sum, none of Guevara-Hernandez's arguments demonstrate that he is entitled to release. As such, on this record, the Court must deny the petition.

## CONCLUSION

Accordingly, the Court **DENIES** Petitioner Jesus Oscar Guevara-Hernandez's [1] Petition for Writ of Habeas Corpus. The Court will issue a separate Judgment to accompany this Memorandum and Order.

So ordered this 15th day of June 2026.

_____
ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE